# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL RITTER | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-16-0438-HE |
| | ) |
| STATE OF OKLAHOMA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## PRELIMINARY INJUNCTION

Plaintiff Samuel Ritter, who was a graduate student at defendant Oklahoma City University ("OCU"), filed this action after OCU expelled him for an alleged violation of the university's policy regarding sexual misconduct.[1] In his initial complaint plaintiff sought injunctive and declaratory relief for OCU's alleged violation of his due process rights and damages for its alleged breach of contract. Plaintiff pleaded that the court had federal question jurisdiction based on the defendant's asserted violation of his Fourteenth Amendment due process rights and its misapplication of Title IX of the Education Amendments of 1972.[2]

Plaintiff filed a motion seeking a temporary restraining order ("TRO")[3] and a hearing was held regarding the motion on May 3, 2016. Plaintiff acknowledged at the hearing that he was relying solely on the existence of a federal question to establish subject matter

---

[1] *Plaintiff initially sued the State of Oklahoma, but acknowledged at the hearing held on May 3, 2016, that the State had been improperly named as a defendant.*

[2] *Plaintiff is asserting supplemental jurisdiction over his state law breach of contract claim.*

[3] *The court converted the motion to one for a preliminary injunction at the hearing.*

jurisdiction. Plaintiff also acknowledged that, because OCU is not a state university, its conduct could not constitute the "state action" required to violate the due process clause of the Fourteenth Amendment. *See* Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'").

The court raised the issue of subject matter jurisdiction,[4] expressing doubt as to whether plaintiff had pleaded a claim under Title IX, because he did not allege in his complaint that he was discriminated against on the basis of sex.[5] *See* Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ., 245 F.3d 1172, 1176 (10th Cir. 2001) ("Title IX thus prohibits gender discrimination against students enrolled in federally supported educational programs . . . ."). Plaintiff argued that, because of its receipt of federal funds, OCU was required to follow the procedures mandated by Title IX and the April 4, 2011, "Dear Colleague Letter"[6] issued by the United States Department of Education in conducting its investigation and imposing disciplinary action. After hearing the parties' arguments and having considered their submissions, the court stated its tentative conclusion that it would

---

[4] *"[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."* Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

[5] *Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).*

[6] *Doc. #10-3.*

2

grant an injunction, based on plaintiff's likelihood of success on its breach of contract claim, if subject matter jurisdiction was determined to exist. It directed the parties to file supplemental briefs on the jurisdictional issue, which the parties have done. Plaintiff also filed an amended complaint, changing his claims to allege erroneous outcome and selective enforcement claims under Title IX, coupled with the state law breach of contract claim.

The issue is whether plaintiff has now sufficiently alleged a basis for subject matter jurisdiction. The Supreme Court set forth the applicable pleading standard in <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500 (2006). As the Court explained, the distinction between "federal-court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief" is "sometimes confused or conflated." <u>Id.</u> at 503. "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." <u>Id.</u> at 1244. And a claim is not colorable "if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" <u>Id.</u> at n.10 (quoting <u>Bell v. Hood</u>, 327 U.S. 678, 682-83 (1946)).

The court concludes plaintiff has sufficiently pleaded a selective enforcement claim under Title IX to establish subject matter jurisdiction. "Such a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." <u>Yusuf v. Vassar Coll.</u>, 35 F.3d 709,

3

715 (2d Cir. 1994).[7] In addition to detailing multiple alleged failures and deficiencies in the university's disciplinary proceedings, plaintiff has now alleged that OCU treated similarly situated females facing comparable disciplinary charges more favorably and that "all students that have been expelled from the University for Sexual Misconduct have been male." Doc. #17, p. 15, ¶92. Admittedly, plaintiff makes many of his allegations "upon information and belief." However, as the court recognized in Doe v. Brown Univ., ___ F.Supp.3d ___, 2016 WL 715794 (D.R.I. Feb. 22, 2016), "[t]he fact that these allegations are pled 'upon information and belief' does not . . . make them improper under Twombly and Iqbal."[8] Id. at *9. Such pleading "is a permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis." Id. (internal quotation marks omitted). Plaintiff's selective enforcement claim meets the bar set by the Supreme Court in Arbaugh to state a colorable claim. He therefore has properly invoked § 1331 jurisdiction.

Plaintiff has not made the showing necessary to establish a likelihood of success on the Title IX claim. The court concludes he is not entitled to injunctive relief based on the

---

[7]*It is unnecessary to determine whether plaintiff also pleaded a colorable "erroneous outcome" claim under Title IX. That is much more doubtful, though, in light of the facts that were found to be undisputed at the hearing, plus plaintiff's failure, at least in the Second Cause of Action to "'allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding.'"* Doe v. Brown Univ., ___ F.Supp.3d ___, ___, 2016 WL 715794, at *1 (D.R.I. Feb. 22, 2016) (quoting Yusuf, 35 F.3d at 715).

[8]*The court was considering a motion to dismiss. Although it is not specified in the decision, it clearly is a 12(b)(6) motion. See* Brown Univ., 2016 WL 715794, at *4.

4

alleged violation of the federal statute. Plaintiff has, though, demonstrated a substantial likelihood of success on the merits of his breach of contract claim.[9]

OCU's Policy Concerning Actions that Constitute Discrimination, Harassment, Sexual Violence, and/or Retaliation provides that any person accused of violating the Policy has, among other rights, the right to an "equitable resolution of the complaint." Doc. #17-5, p. 17. When the penalty is as severe as that imposed in this case, with its potentially devastating consequences, the accused is entitled to more process than plaintiff was afforded. Plaintiff was given limited opportunity to rebut the charges made against him in his one meeting with the Title IX Coordinator. He had no opportunity to challenge certain other damning conclusions she apparently reached and relied on in recommending the penalty that was eventually imposed and of which he learned only after filing his lawsuit. Because any appeal that is filed is based on the record, it is critical that the accused have a reasonable opportunity to present his version of the events, particularly as to those adverse "findings" which were the apparent basis for the substantial penalty meted out here. Anything less than that cannot be an "equitable resolution of the complaint." For these reasons, and those stated at the hearing on May 3, 2016, the court concludes plaintiff has demonstrated the first element of

---

[9]*The court disagrees with defendant that plaintiff is seeking a mandatory injunction and not merely seeking to preserve the status quo. "In the context of a motion for preliminary injunction, status quo means 'the last peaceable uncontested status existing between the parties before the dispute developed.'" Red Robin Int'l, Inc. v. Lehigh Valley Rest. Grp., Inc., 2016 WL 705988, at \*2 (D. Colo. Feb. 23, 2016) (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 981 (10th Cir. 2004)), appeal filed No.16-1071 (10th Cir. March 9, 2016).*

the preliminary injunction inquiry. *See* <u>Gen. Motors Corp. v. Urban Gorilla, LLC</u>, 500 F.3d 1222, 1226 (10th Cir. 2007) ("To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.").

The court concludes plaintiff has also demonstrated that he will suffer irreparable harm if the injunction is denied. The loss of educational and career opportunities he will encounter if he is not reinstated and allowed to graduate is not readily compensable in money damages. *See e.g.,* <u>Kroupa v. Nielsen</u>, 731 F.3d 813, 821 (8th Cir. 2013) (irreparable injury included loss of educational and professional opportunities). That harm, the court concludes, outweighs the burden imposed on OCU by the issuance of an injunction – the grading of a test and master's thesis. While the latter is not a small task, it is inconsiderable in comparison to the threatened injury to plaintiff if he was wrongfully expelled.

Finally, the last element that a plaintiff must show to obtain an injunction is that the injunction is in the public interest. This element, too, weighs in plaintiff's favor as it is always in the public's interest that a student be treated fairly before being disciplined.

The court recognizes that colleges must take seriously allegations of sexual assault. It also recognizes that handling claims of sexual misconduct presents sensitive and difficult issues. Nonetheless, universities must ensure that the rights of both the accused and the

accuser are protected.

Having determined that subject matter jurisdiction exists and that plaintiff has met his burden of showing that he is entitled to injunctive relief, the court **grants** plaintiff's motion for a preliminary injunction [Doc. #4] as follows:

(1) The expulsion order issued by OCU is STAYED pending further order and

(2) OCU is directed to permit plaintiff to complete any remaining exams and to have any papers and his masters thesis considered, i.e. permit him to attempt to complete all remaining graduation requirements.

The court concludes a bond is not required under the circumstances present here. There is no suggestion OCU's faculty will be required to engage in any conduct or that the university will incur any expenses it would not have had to bear if plaintiff had continued as an enrolled student and not been expelled.

In light of the time-sensitive nature of various aspects of this case, it is set for scheduling conference on Tuesday, May 10, 2016, at 2:00 p.m. in chambers.

**IT IS SO ORDERED.**

Dated this 6th day of May, 2016.

_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE