## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

SAMUEL RITTER,                                    )
                                             )
                                             )
                  Plaintiff,         )
                                             )
v.                                           )     Case No. CIV-16-0438-HE
                                           )
OKLAHOMA CITY UNIVERSITY,     )
by and through its BOARD OF REGENTS   )
ex rel. THE OFFICE OF STUDENT AFFAIRS,)
                                           )
                  Defendants.     )

## VERIFIED AMENDED COMPLAINT [17]
## REVISED TO REDACT NAME OF ALLEGED VICTIM PER ORDER [26]

Plaintiff, Samuel Ritter, alleges against the Defendant, as follows:

### Parties and Jurisdiction

1.      Plaintiff, Samuel Ritter ("Ritter"), is a graduate student at Oklahoma City University and a resident of Oklahoma City, Oklahoma.

2.      Defendant, Oklahoma City University, ("University") is a private university organized and existing under the laws of The State of Oklahoma.

3.      This District Court has federal question jurisdiction over the allegations in this Complaint, pursuant to 28 U.S.C. § 1331 because the claims involve questions arising under Title IX of the Education Amendments of 1972, 20 U.S.C §§ 1681-88.   The Court also has supplemental jurisdiction over the remaining claims pursuant to 28 U.S. C. § 1367 because the claims involve state law claims arising out of the same case or controversy giving rise to the federal law claims.

4.      The Court may also have jurisdiction under 28 § 1343(a)(3).

5.      This Court has personal jurisdiction over Oklahoma City University on the grounds that it is conducting business in the State of Oklahoma in the Western District.

6.      Venue for this action properly lies in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391 because the University is considered to reside in this judicial district and a substantial part of the event or omissions giving rise to the claim occurred in this judicial district.


**Facts Common to All Claims**

7.      On March 22, 2016, the Office of Student Affairs of the University presented a Notice to Ritter via electronic mail that alleged he engaged in conduct in violation of the University's Policy Concerning Actions That Constitute Discrimination, harassment, Sexual Violence, and/or Retaliation, specifically Section VI (18) Sexual Misconduct.  See Exhibit 1, "Notice".

8.      University is a state sanctioned institution that receives federal funding and is subject to Title IX of the Education Amendments of 1972.

9.      The University also receives public funds from the State of Oklahoma in the form of Oklahoma Tuition Aid Grants and Oklahoma Tuition Equalization Grants.

10.     The Notice includes a list of two allegations reported by another student named ████████████ ("complainant") in the Notice. *See Exhibit 1.*

11.     The Notice states that a preliminary investigation had already occurred without any input or notice to Ritter.

12.     Ritter was immediately suspended from the University's teaching responsibilities absent any chance to meaningfully respond to the allegations.

13.     Ritter was further encouraged not to discuss this matter with anyone and appear for an "appointment" the following day.

14.     The Notice contains detrimental action toward his enrollment and employment in the University taken before he was afforded any response, or even an opportunity to review the statements or report made by his accuser.

15.     Ritter was afforded less than twenty-four (24) hours to appear at an "appointment" and respond to the allegations in a meeting with Joey Croslin, the Title IX Coordinator and investigator.

16.     Ritter appeared at the "appointment" at 11:30 a.m. on March 23, 2016 with Ms. Croslin at which time he first learned that this was his opportunity to present his side of the matter.

17.     A "No Contact" order was placed on Ritter on March 22, 2016.

18.     Ritter was not provided any written report of the allegation or statement of the accusing student.

19.      Ritter orally rejected the findings presented at the appointment, and advised the University that he had not violated any policy.

20.     The University emailed Ritter a letter on April 18, 2016 advising that he had been expelled. *See Exhibit 2,* "Letter."

21.     On April 27, 2016, Ritter timely requested in writing an appeal and hearing on the matter.  *See Exhibit 3.*  Ritter has asserted his innocence of the charge consistently.

22.     Ritter has been an exemplary student and has not had any discipline issues with the University before.   He has been a leader and role-model while attending the University.

23.     Ritter was awarded an induction into Pi Kappa Pi, an honors society for having the highest GPA (4.0) of his class, which he now cannot receive.

24.     The accusing student claimed he was a friend of Ritter's for approximately fifteen (15) months.  Both Ritter and the accusing student had engaged in wrestling each other many times, other instances of close physical contact, and often slept together in the same bed.  The subject action occurred at the off-campus residence of Ritter during Spring Break.

25.     No sexual intercourse happened between Ritter and the accusing student.

26.     Upon information and belief, there were no allegations of force, duress, or incapacity regarding the sexual event.

27.     The entire alleged sexual event lasted less than a minute.

28.     ██████████ texted Ritter multiple times that he loved Ritter.  He texted he missed Ritter.  See *Exhibit 6*.

29.     Based upon the history of the ██████████ and Ritter the alleged sexual contact here could be deemed by reasonable people as an appropriate invitation to sex and not violative of any law or University policy.

30.     The University allows an appeal for alleged violations of student policy.  The University did not afford Ritter any hearing with the ability to review the evidence, view

any reports, learn which witnesses were interviewed, call witnesses, or defend himself in any meaningful way before expulsion.

31.     The Notice did not contain any allegation of a "hostile environment."

32.     Joey Croslin, who was vested with the sole authority to investigate and adjudicate the alleged claim, conducted the investigation.  From the outset, she abused her authority.  Rather than proceeding in a fair and impartial manner, Croslin set out to find Ritter responsible for sexual misconduct.  Croslin conducted her investigation in private and failed to advise Ritter of his rights under the University's policies.  Croslin denied Ritter the opportunity to be present during her interviews, disclose who she interviewed, or disclose what evidence was submitted, let alone have an advisor or attorney present to attend the interviews.  Croslin conducted the entire process in favor of the complainant and with a presumption of guilt placed on the Plaintiff.  Ritter was entitled to fairness and fundamental due process protections given the nature of the charges.

33.     Croslin determined that Ritter action were somehow "grooming techniques" and sufficient to state he was sexual "predator."

34.     Ritter was never given any Notice that he charged with grooming an adult male, or that he was going to be found to be a sexual "predator."

35.     Croslin obtained additional information after her March 23rd appointment with Ritter from the complaining student and another yet unknown female witness regarding personal observations and alleged uncomfortableness by the accuser at an upcoming choir performance.

36.     Ritter was never afforded the above information in allegation 32 regarding this additional information, the findings or any opportunity to present rebuttal testimony or evidence necessary to respond.

37.     The Defendant asserts that the standard of proof for the alleged violation is whether it is more likely than not a policy violation occurred, i.e. a preponderance of the evidence. This standard of proof is wholly inadequate considering the nature and seriousness of the charges and punishment exacted.

38.     In Oklahoma, the correct burden of proof in quasi-criminal administrative proceedings, such as here, is where the evidence is clear and convincing. *See Cherokee Data Computer parts and Service Inc. v. Okla. Dept of Labor*, 2005 OK CIV APP 81, 122 p. 3d 56 and *Johnson v. Bd of Gov. of Registered Dentists*, 1996 OK 41, 913 P.2d 1339.

39.     By accepting public funds from the State of Oklahoma the University is subject to fairly and equitably incorporating the doctrine of Due Process and legal safeguards afforded by the Constitution for any deprivation under the color of State or Federal law.

40.     The Defendant does not afford Ritter the right to be represented by licensed counsel where counsel is allowed participate directly in any meeting or conference.

41.      To graduate, Ritter only has to turn in one thesis paper, a smaller paper, and take one final exam the week of May 2, 2016.

42.     Ritter was also terminated from his employment as a student music conductor with the University.

43.     The University notified Ritter's conducting professor that he was expelled.

44.     Ritter is a fitful sleeper and his condition is exacerbated after consuming alcohol.  Ritter admitted he was groggy during the alleged sexual contact and did not fully realize what was transpiring.

45.     The complainant initially began to rub Ritter's genitals after being prompted but abruptly stopped.

46.     Ritter has obtained a full scholarship to Indiana University to pursue study toward a doctorate in Music which begins this summer.  This scholarship and attendance is contingent on Ritter obtaining his Masters in Music degree from Defendant.

47.     Defendant notified Ritter on April 18, 2016 that he violated the University's "non-discrimination" policy by engaging in "prohibited behavior."  *See Exhibit 4.*

48.     The University policy under Section II "Policy Prohibiting Discrimination" does not even describe or include the allegations levied against Ritter.  See Exhibit 5, *Policy Concerning, Actions, That Constitute Discrimination, Harassment, Sexual Violence, AND/OR Retaliation*.

49.     University policy also states that in finding a "hostile environment" it should include for consideration the severity of the action, frequency and pervasiveness of the action, the setting and context of the action, other incidents, or a repetitive series of incidents.  *See page 5 of Exhibit 5*.

## First Cause of Action– Injunction – Rule 65

50.     Plaintiff incorporates the allegations set forth above.

51.     Defendant has denied Ritter a fair and equitable investigation and review process by 1) denying him the right to a hearing before imposing expulsion or any adverse disciplinary action, 2) not affording him information obtained after his initial appointment 2) denying him the right to counsel that can appear and participate in the Investigation, Appeal and Review Hearing.

52.     Ritter is a twenty-five (25) year old Music student with no legal training.  The purported investigation here took less than thirty (30) days which is in direct conflict with the guidelines and protections stated by the Department of Education or similar cases.

53.     The University by expelling Ritter has interfered with his academic progress and already accepted the course fees and other administrative costs he has incurred.

54.     Despite the determination of guilt, the University would possibly still like Ritter to participate in an appeal where they assert an incorrect and prejudicial standard for the burden of proof, and do not allow new or revised evidence.

55.      The pending specter of potential criminal proceeding against Ritter further heightens his need to have counsel that can participate in the hearing to ensure his rights are preserved and he is not completely without means to address the complexity and gravity of the charges, evidence, and procedure.

56.     Ritter seeks the Court to enjoin the Defendants from denying him a hearing before incurring any suspension or expulsion, stopping the expulsion and suspension and allowing him to complete his coursework and test, and counsel having the ability to participate and cross-examine, and the hearing panel being instructed on the correct burden of proof.

57.     Ritter maintains a substantial likelihood to prevail on the merits.  Several other cases have addressed whether it is a Title IX violation and a university policy violation to deny an accused counsel and guidance with the ability to participate in a university discipline hearing and held that denial of counsel is a violation.

58.     Ritter stands to have irreparable harm inflicted upon him with the SEVERE stigma of the allegations, the denial to complete his semester, forced failing grades, the further suspension of his academic progress, and being subject to other various fees and punitive measures asserted by Defendant.

59.     The threatened irreparable injury to Ritter outweighs any injury to Defendant.  Defendant has thrust Ritter into a situation of jeopardy where evidence and testimony adduced at his university hearing may have implications and legal repercussions in any subsequent criminal or civil legal proceeding.

60.     Ritter will have a gap in academics that he would have to explain to other universities or employers because of the processes used wrongfully against him.

61.     The granting of this injunction is not adverse to the public interest.  The public interest is served where an individual's rights are preserved and applied lawfully through the tenets of law expressed herein.


**Second Cause of Action – Violation of Title IX of the Education Amendments of 1972**
**<u>ERRONEOUS OUTCOME</u>**

62.     Plaintiff incorporates the foregoing allegations herein.

63.     Title IX of the Education Amendments of 1972 provides , in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

64.     Title IX of the Education Amendment of 1972 applies to an entire school or institution if any part of that school receives federal funds.

65.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the *prompt and equitable* resolution of student…complaints alleging any action which would be prohibited  by" Title IX or regulations thereunder.  34 C.F.R. § 106.8 (b) (Dept't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (*emphasis added*).  Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.[1]

66.     The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also *"[accord] due process to both parties involved…]"*[2]

67.     The "prompt and equitable" procedures that a school must implement to accord due process to both parties involved" must include, at a minimum:

a.   "Notice …of the procedure, including where complaints may be filed,"

---

[1] *See generally* U.S. Dep't of Education, Office of Student Rights, *Revised Sexual Harassment Guidance: Harassment of Student by School Employees, Other Student, or Third-Parties. –*Title IX (2001) at 19-20, 21 & nn. 98-101.
[2] *Id*. At 22 (emphasis added).

     b. "Application of procedure to complaints alleging [sexual] harassment…",

     c.  Adequate, reliable, and impartial investigations of complaints including the opportunity to present witnesses and other evidence",

     d.  "Designed and reasonably prompt timeframes for the major stages of the complaint process",

     e.  'Notice to the parties of the outcome of the complaint…'"[3]

68.    A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults."[4]

69.    Based on the foregoing, supra at ¶¶ 6-43, Oklahoma City University failed to conduct an adequate, reliable, and impartial investigation of the complaints prior and subsequent to March 23rd, 2016, in a manner that was biased against Ritter.  From the outset, the investigation and "findings" were slanted in favor of complainant when the investigation proceeded without notifying Ritter of the charges against him.  Ms. Croslin presented a skewed version of the facts by failing to apprise Ritter of an additional female witness and her subjective observation of complainant, complete with the lack of any corroboration or consideration of how this witness arrived at her observations.  None of this information was provided to Ritter.  The foregoing procedural defects resulted in erroneous and adverse findings that Ritter was responsible for the contact, but also that he

---

[3] *Id*. At 20.
[4] *Id* at 21.

somehow created a "hostile environment", and his actions were akin to those of a "sexual predator."

70.     All sexual contact between University students is not prohibited.

71.     Homosexual sexual contact is not prohibited by the University.

72.     Not all invitations for sexual contact are verbal.

73.     Not all acceptances or declinations to invitations for sexual contact are verbal.

74.     The accusing student here had never given Plaintiff any indication that the sexual contact upon him by Ritter would be entirely unwanted.

75.     ███████████, the complainant, texted Ritter and told him that he loved him multiple times prior to March 2016.  See exemplar, *Exhibit 6*.

76.     The previous actions, activities, texts, and demeanor exhibited and engaged in by the accusing student could be interpreted by reasonable people that a sexual contact from Plaintiff could have been normal and forecast.

77.     Both adult men wrestled a lot, were on many occasions in close physical contact, sleeping in the same bed multiple times, with the accusing student having become recently single, and Ritter was only in his underwear on multiple instances with ██████.

78.     Ritter was only notified of the conclusion of Croslin and not the findings she made thus prohibiting him from being able to file a complete appeal and response to those findings.

79.     Any appeal by a Provost of the University is skewed in favor of University because only the original complaint, investigative report, the administrative determination, and appeal are reviewed for suffiency, and on a schedule of forty-five (45) days.

80.     Ritter is prejudiced by not even having been provided a copy of the investigation report, all of the evidence considered, or any opportunity to rebut or respond to same.

81.     University therefore disregarded and violated its own policy, the provisions of Title IX, and exacted a fundamentally unfair process upon Ritter to great detriment to his academics, his person, and his reputation.

82.     Ritter is entitled to recover damages from University for the implementation of the failing of the University, along with all incidental and consequential damages.


**Third Cause of Action – Violation of Title IX of the Education Amendments of 1972**
**<u>SELECTIVE ENFORCEMENT</u>**

83.     Plaintiff incorporates the allegations set forth above.

84.     The University has created an environment where an accused male student is fundamentally denied due process by being prosecuted through the conduct process under a presumption of guilt.  Such a one-sided process deprived Ritter, as a male student, of educational opportunities at the University on the basis of his sex.

85.     The University had no intention of following its own policies and procedures for Ritter as the male accused of sexual misconduct when it erroneously found Ritter responsible for sexual misconduct, creating a hostile campus environment, or conduct evincing that of a "sexual predator", of which there was no reliable, pervasive, or credible evidence.

86.     The University's stated policies and procedures demonstrate their gender-biased practices with respect to respondents, who are invariably male students accused of sexual misconduct.  Specifically,

    a. Following receipt of a notice of violation or complaint The University's policy provides that the Complainant has the right to "seek counseling and advice from the Compliance Coordinator."  However, the respondent, who is invariably a male student, is *not* immediately provided the opportunity to select any University advisor.  Thus, the complainant is able to receive assistance and guidance from the outset, before a respondent is even aware that that a complaint has been made.

    b. According to the University's policies the Compliance Coordinator makes an initial determination as to whether a **written** complaint alleges conduct prohibited by the Policy.  The respondent, who is habitually male, is not provided the opportunity to receive the written complaint, or consult with anyone, before a decision is made as to whether a policy violation may have occurred. Further, all respondents are "prohibited from disclosing any information concerning the content of a meeting or hearing to any non-participant."

    c. The University policies do not require any notice of the identity or testimony of all the witnesses who could be used against a respondent. Respondents, who are invariably male, are not afforded an opportunity to present rebuttal testimony or exculpatory evidence to witness testimony before a finding of a policy violation is made.

87.     The University applied its stated policies and procedures and gender-biased practices in a manner that discriminated against Ritter on the basis of his sex and led to an erroneous and adverse outcome.   Specifically:

    a. Ritter was given insufficient notice and time to appreciate and prepare for the March 23rd, 2016 "appointment" set by Croslin, which became the sole and limited opportunity for Ritter to present his side of the facts, understand the process, receive advice or guidance, or be given any additional opportunities to produce witnesses or rebuttal evidence.

b. Ritter was never advised of a subsequent female witness or her testimony. Nor was he advised of a subsequent meeting between Croslin and complainant where the one instance of appearing at a choir was discussed.

c. Ritter was never advised that his conducting a women's choir would somehow constitute a "hostile environment" and that the remedy for such was expulsion and no lessor accommodations could be contemplated.

d. The same Compliance Coordinator that took the complaint, and was available for counseling and guidance of the complainant, and performed the investigation, was the same one who prepared the undisclosed report of findings, and the decision-maker on policy violation.  This is prejudicial to male students such as Ritter.

88.     Upon information and belief, the University has treated similarly situated females, that is, females facing comparable disciplinary chargers, that plaintiff is facing, more favorably.

89.     Ritter has a protected liberty interest in his good name, reputations, honor, and integrity, of which he cannot be deprived without a fair and equitable investigation, hearing, and appeal process.

90.     Upon information and belief, since the *Policy Concerning Actions That Constitute Discrimination, Harassment, Sexual Violence, and/or Retaliation*, and its predecessor policy invoked by the Dear Colleague Letter was established the number of male student expelled has increased considerably.

91.     Upon information and belief, the university has demonstrated a pattern of inherent and systematic gender bias and discrimination against male students accused of sexual misconduct.

92.     Upon information and belief, all students that have been expelled from the University for Sexual Misconduct have been male.

93.   Upon information and belief, the University possesses communications evidencing Defendant's inclination to favor reporting students alleging sexual misconduct over male students who are accused of sexual misconduct.

94.   The University's guidelines and policies are set up to disproportionately affect the male student population of the University community as a result of higher incidences of student complainants of sexual misconduct allegedly perpetrated by males.

95.   Based on the foregoing, supra, male respondents, like Ritter, in sexual misconduct cases at the University are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

96.   Based, on the foregoing, supra, the University's *Policy Concerning Actions That Constitute Discrimination, Harassment, Sexual Violence, and/or Retaliation* are inherently discriminatory against males accused of misconduct.  The University's policies and procedures fail to ensure a fair and impartial investigation, hearing, or appeal process.

97.   Ritter has a protected liberty interest in pursuing his education, as well as in future educational and employment opportunities and occupations liberty, of which cannot be deprived without fair and equitable protections in the process.

98.   Because he was a male student accused of sexual misconduct, Ritter did not receive any rationale for the findings of the University, especially as to a determination of "grooming techniques" employed that were sufficient to deem Ritter a sexual "predator."

99.   A person admitted to a university, and has paid tuition to that university, has a protected property interest in continuing his education at that university until he has

completed his course of study.  The University cannot deprive a person of this interest without a fundamentally fair and equitable process.

100.   Ritter was entitled to a process commensurate with the seriousness of the allegations and potential discipline, sanctions, and repercussion he was facing.  The allegations in this case resulted in the harshest sanction available and will have life-long ramifications for Ritter, and are quasi-criminal in nature, and were enacted against him because he was a male accused of sexual misconduct.

101.   Because he was a male accused of sexual misconduct, the University imposed sanctions on Ritter that were disproportionate to the severity of the charges levied against him and without any consideration of his exemplary academic performance and clean disciplinary record at Oklahoma City University.

102.   It is vague and contradictory to purport to give a policy Notice over an instance of "touching genitals" which lends itself more to sexual matter, but then somehow claim this action was found as "discriminatory" by the University.

103.   The University did not make a finding of sexual violence, or even sexual harassment.

104.   Such a determination of a "discriminatory" action render the investigational finding to be subject to the whims of the University and are therefore arbitrary and capricious.

105.    The University has not provided any findings or explanation of how the alleged touching was prohibited under the totality of the circumstances nor how this one (1) isolated event somehow created a hostile campus environment.

106.    The punishments enacted on Ritter, because he was a male accused of sexual misconduct, are extreme and out of line and beyond the bounds of reasonableness when considered with the similar alleged offenses.

107.    Having a pre-determination of guilt upon an accused, because he is a male accused of sexual misconduct, is fundamentally wrong and departs from the inalienable rights to fairness and substantial justice, an unbiased opportunity to confront accusers, witnesses, and present evidence to an impartial adjudication.

108.    Stating that Ritter should not talk to anyone about the charge conflicts with University policy and is prejudicial.

109.    University policy sates that "serious misconduct such as sexual assault may be referred to local law enforcement for possible criminal prosecution." *See Exhibit 5, p. 17, Section B.*

110.    As a result of Defendant's conduct, Ritter is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs, and disbursements.

## Forth Cause of Action – BREACH OF CONTRACT

111.    Plaintiff incorporates the allegations set forth above.

112.    Ritter paid University money for is education, and in return, the University contracted to give Ritter access to it graduate degree program.

113.    The relationship between Ritter and University is contractual in nature, and each party owes the other certain duties, some of which can be found in the *Policy Concerning, Actions, That Constitute Discrimination, Harassment, Sexual Violence, AND/OR Retaliation*

114.    University breached its contract with Ritter by failing to provide him with a "fair" and "impartial" investigation and adjudication of his claims and evidence, as the University policy requires.

115.    University has committed several breaches of its agreement with Ritter during the investigation and determination process.  A non-exhaustive list of University breaches include the following:

> a. Failing to advise Ritter accurately of his rights under the policies as more fully described above.
>
> b. Failing to allow Ritter access to allegations and evidence used against him, or participate in the interview process upon which his expulsion is based;
>
> c. Failing to provide him with the names of all witnesses against him or statement used against him so he could accurately rebut or respond to them;
>
> d. Failing to allow him sufficient time and information to prepare any effective response or rebuttal to the charges against him in his initial meeting with the Title IX coordinator.
>
> e. Failing to provide him with any Notice that his student employment would be suspended and then terminated without opportunity to effectively respond to the charge;

116.    As a direct and proximate result of these breaches, Ritter was erroneously found responsible for a "discriminatory" violation stemming from a perceived sexual situation causing him to suffer the harms described above.

117.    Ritter will suffer additional damages in the unwarranted delay of his graduation, gap in his academic transition, loss of a full scholarship to Indiana University, attorney's fees, severe harm to his reputation, and other direct and consequential damages.

## Relief Requested

WHEREFORE, premises considered, Plaintiff, Samuel Ritter, prays that this matter is tried to the Court and the Court renders judgment in favor of Plaintiff and against Defendant as follows:

118.    On his First Cause of Action against the Defendant the Plaintiff prays that this Court will enjoin the Defendant from denying him a fundamentally fair and equitable process under Title IX and Oklahoma law.  Specifically, this Court should find that he has the right to an equitable investigation, hearing, and appeal process with full evidentiary disclosure; the right to counsel, and that counsel be allowed to participate and advise the student.  Further, Defendant should be enjoined from using an incorrect standard of proof in his hearing and any hearing panel should be instructed on the correct standard of clear and convincing evidence.

119.    On his Second Cause of Action for Title IX violation – Erroneous Outcome - against the Defendant the Plaintiff prays that this Court will find that Defendant has unlawfully denied Plaintiff his rights to effective counsel and guidance, failed to

adequately ensure a fair an equitable treatment under University policy and Title IX, rescind any allegations or finding of being a "sexual predator," and rescind unlawfully pre-determined guilt on a charge that carries such a stigma and litany of negatives that Defendant be ordered to show cause why guilt prior to any hearing or an opportunity to present witnesses and evidence has been determined.   Further, Defendant should be ordered and decreed to ensure equivocal rights, impartiality, and every semblance of fairness to the Plaintiff in its administrative procedures.

120.   On his Third Cause of Action Title IX violation – Selective Enforcement - against University for biased gender treatment, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, emotional damages, damages to reputation, past and future economic losses, loss of educational and musical opportunities, plus prejudgment interest, attorney's fees, expenses, costs, and all other relief deemed just and equitable in the premises.

121.   On his Fourth Cause of Action against University for Breach of Contract, a judgment awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, emotional damages, damages to reputation, past and future economic losses, loss of educational and musical opportunities, plus prejudgment interest, attorney's fees, expenses, costs, and all other relief deemed just and equitable in the premises.

122.   For such other and further relief as the Court deems proper.

Respectfully submitted,

*s/ Chad C. Taylor*
Gary W. Wood
OBA #16365
Chad C. Taylor
OBA # 18308
*Attorneys for Plaintiff*
RIGGS, ABNEY, NEAL, TURPEN,
   ORBISON & LEWIS, P.C.
528 NW 12th Street
Oklahoma City, Oklahoma 73118
gwood@riggsabney.com
ctaylor@riggsabney.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 7th, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

John N. Hermes
Patrick L. Stein
MCAFEE & TAFT A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7130
john.hermes@mcafeetaft.com
patrick.stein@mcafeetaft.com

*s/Chad C. Taylor*

## VERIFICATION

STATE OF OKLAHOMA      )
                                      ) ss.
COUNTY OF OKLAHOMA   )

I, Samuel Ritter, have reviewed the foregoing Complaint and hereby attest that it is true and correct to the best of my personal knowledge and belief.

Samuel Ritter

Subscribed and sworn to me before this 4th day of May, 2016

(Seal)

Notary Public

My Commission expires:
5/14/19