# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMUEL RITTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. CIV-16-0438-HE |
| | ) |
| OKLAHOMA CITY UNIVERSITY, | ) |
| by and through its BOARD OF REGENTS ex | ) |
| rel. THE OFFICE OF STUDENT AFFAIRS, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT OKLAHOMA CITY UNIVERSITY'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

The principal issue here is that to state either his "erroneous outcome" or "selective enforcement" claims under Title IX, Plaintiff's complaint must allege non-conclusory facts that plausibly suggest his expulsion was motivated by unlawful gender bias. Plaintiff contends the Amended Complaint does this based on allegations pertaining to supposed "evidentiary weaknesses in the case against him," Pltf. Rep., Doc. #30, at 6, and certain alleged "procedural flaws" he contends "affected the proof and outcome of the proceeding." *Id.* at 7. These allegations are insufficient. As the authority relied upon in Plaintiff's response brief aptly explains:

> [A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss. The fatal gap is, again, the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias.

Pltf. Resp. at 5 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

That is the problem here: a lack of particularized allegations suggesting that gender bias was a motivating factor in Plaintiff's expulsion. To be sure, the Amended Complaint contains a number of conclusory allegations of gender bias and differential treatment. *See* Am. Compl., ¶¶ 87-101. But under *Twombly*, those allegations are not well-pleaded and should not be accepted as true. Indeed, the complaint in *Twombly* contained a bald allegation of conspiracy, but the Supreme Court held the complaint was insufficient because it lacked specific facts plausibly suggesting a conspiracy was present, even in the face of well-pleaded allegations showing parallel conduct. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). It does not matter how many times the Amended Complaint repeats the phrase "because [Plaintiff] was a male accused of sexual misconduct" or something similar, those are conclusory allegations that should be ignored for present purposes. A complaint under Title IX must point to some specific fact or facts that suggest gender bias was a motivating factor in the Plaintiff's expulsion. *See Yusuf*, 35 F.3d at 715 ("Allegations of a causal connection . . . might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."). The Amended Complaint fails to do so.

In his response, Plaintiff contends there is a supposed "legal groundswell" to the effect that current implementation of Title IX is "seriously flawed" and "massively ensnares males unfairly and disproportionately." Pltf. Resp. at 6. This is nothing more than an allegation that males are disproportionately impacted by universities' enforcement of their sexual harassment policies. As explained in OCU's motion and

2

supporting brief, allegations of disparate impact do not suffice to state an intentional discrimination claim under Title IX, particularly absent some well-pleaded allegation showing that males are disproportionately punished in relation to number of males reported for sexual assault. *See* Mot. to Dismiss at 9-11. To provide a hypothetical example, if there are ten total students reported for sexual assault and nine of them are male, a university's expulsion of nine males and one female would not suggest unlawful gender bias. Moreover, Plaintiff's implicit contention here is that OCU supposedly ran roughshod over Plaintiff's procedural rights in an effort to comply with an allegedly flawed federal law. This further undermines his claim that intentional gender discrimination is what motivated OCU's actions with respect to Plaintiff.

Next, Plaintiff implicitly acknowledges that his allegations regarding disparate impact on males are unsupported and conclusory, but he asks the Court to accept them anyway because "no discovery has yet been conducted in this case" and so Plaintiff does not have the ability to plead any specific facts showing a disparate impact. *See* Pltf. Resp., at 9. Plaintiff further argues that "[i]t is possible" he could produce statistical evidence showing a disparate impact "after conducting discovery." *See id.* at 10. Plaintiff is trying to put the cart before the horse. The whole point of *Twombly* and its progeny is that a plaintiff must allege facts nudging a claim across the line from possible to plausible *before* the plaintiff is entitled to conduct costly discovery. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 684-85 (2009) ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process.").

3

Admittedly, a plaintiff need not possess in every case detailed statistical evidence at the pleading stage, but a plaintiff must have knowledge of—and plead in the complaint—facts or information known to him that plausibly suggest intentional discrimination. Otherwise, discovery is nothing more than the proverbial fishing expedition. Some factual basis for a plaintiff's purported belief is required at the outset. Based on the Amended Complaint and Plaintiff's response brief, it appears all Plaintiff has is a hope that he might possibly find some evidence of intentional discrimination if the Court allows him to proceed to discovery. The Federal Rules of Civil Procedure require more.

Plaintiff further argues the allegedly favorable treatment the victim received during the disciplinary process evidences unlawful gender bias. *See* Pltf. Resp. at 10-11. Courts have rejected that argument in cases where the alleged victim was a female and the accused a male. *See, e.g., Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015); *see also Doe v. Washington and Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015) (unpublished order citing *Columbia* for this exact proposition). Plaintiff's argument falls even flatter under the circumstances here because both he and the alleged victim are male. Allegedly favoring a male victim does not suggest the University was biased against Plaintiff *because of his sex*.

Plaintiff's reliance on *Washington and Lee* in support of this argument, *see* Pltf. Resp. at 11 & n.3, is misplaced. The complaint in *Washington and Lee* alleged the university's Title IX coordinator had made public statements at a campus seminar to the effect that women who consented to sexual intercourse but later regretted it were victims

4

of rape because they had internal reservations about the encounter. *See* 2015 WL 4647996, at *10 & n.6. The Court found that public statement suggested gender bias on the part of the Title IX coordinator and was particularly relevant under the circumstances of that case because the female complainant there consented initially to the sexual encounter in question, had sex with the plaintiff again after the incident in question, and only reported the first encounter as an alleged assault several months later after the plaintiff began dating someone else. *See id.* at ** 2-3, 10. Given that Title IX coordinators' role in the proceeding and her publicly expressed bias toward females, the *Washington and Lee* court concluded the complaint plausibly suggested the university's disciplinary actions against the male plaintiff were motivated by unlawful gender bias. The Amended Complaint in this case alleges nothing that would suggest a similar bias on the part of Ms. Croslin.

Further, Plaintiff contends he has sufficiently alleged a selective enforcement claim based on his bald allegation that he believes OCU has treated women facing similar allegations differently. *See* Pltf. Resp. at 13 (citing Amended Complaint, ¶ 88). As explained in OCU's opening brief, however, Plaintiff's mere belief this has happened does not plausibly suggest it did. *See* Mot. to Dismiss, at 7. He must allege some specific facts that plausibly suggest OCU treated a female facing similar allegations differently. Plaintiff's hope that he might possibly be able to prove that through discovery is not sufficient.

Although Plaintiff does not rely on it in his response brief, the Court's Preliminary Injunction cited *Doe v. Brown University*, — F. Supp. 3d —, 2016 WL 715794 (D.R.I.

5

Feb. 22, 2016) for the proposition it is appropriate for a plaintiff to make certain allegations "upon information and belief" when he "reasonably believes" the matter alleged is true but will need discovery to "confirm its evidentiary basis." *See* Doc. #19, at 4 (quoting *Brown*). OCU does not take issue with that general proposition. *See* OCU Mot. to Dismiss, at 7-8. However, as the *Brown* court acknowledged, conclusory allegations "akin to: 'Upon information and belief, procedural defects were motivated by gender bias.'" are insufficient. *See Brown*, 2016 WL 715794, at *10 (quotation omitted). Critically, the "upon information and belief" allegations found permissible in *Brown* referred to specific statements made by Brown employees and professors that Title IX investigations at that university were rigged against males, and included references to other specific cases of alleged sexual misconduct where the university had allegedly shown a gender bias against males, as well as two specified news articles purportedly documenting similar events. *See id.* at ** 8-9. The Amended Complaint does not contain allegations of gender bias even approaching that level of detail, whether "upon information and belief" or otherwise.

The last argument in Plaintiff's response brief contends the Amended Complaint adequately states a breach of contract claim. Pltf. Resp. at 13-15. Although OCU denies Plaintiff will be able to prevail on the merits of his breach of contract claim, OCU did not challenge the breach of contract claim under Rule 12(b)(6). Instead, OCU contends the Court should dismiss the breach of contract claim under Rule 12(b)(1) and 28 U.S.C. § 1367(c) because, after the Title IX claims are dismissed, the Court will not have original subject matter jurisdiction over any remaining claim. *See* OCU Mot. to Dismiss, at 4-15.

6

Since he did not respond to that argument, Plaintiff apparently agrees the whole case should be dismissed if the Court dismisses his Title IX claims.[1] *See id.* ("[O]ne clear example where claims 'properly belong in state court' is 'when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Finally, Plaintiff has filed a motion for leave to again amend his complaint [Doc. #31] should the Court find his current Amended Complaint insufficient. The Court should deny Plaintiff leave to amend because it would be futile. Plaintiff only added his conclusory allegations of intentional gender discrimination after OCU pointed out that Plaintiff's original complaint did not provide a basis for federal subject matter jurisdiction. *See* Doc. #10, at 9-10 & n.9. The present allegations were added to avoid summary dismissal for lack of subject matter jurisdiction following a hearing where the Court indicated it would likely enter a preliminary injunction if it had a colorable basis for jurisdiction but was skeptical it had jurisdiction based on Plaintiff's original filings. Moreover, neither Plaintiff's response brief nor his separate motion for leave to amend set out what additional facts he would allege that might suggest OCU's actions were motivated by gender bias. Indeed, his response brief argues he needs discovery to possibly learn certain key additional facts. Therefore, under the circumstances here, it would be futile to allow Plaintiff leave to amend.

---

[1] Plaintiff also apparently concedes the Court lacks jurisdiction under 28 U.S.C. § 1343(a)(3), which only establishes jurisdiction for claims involving state action. *See* Mot. to Dismiss at 13.

7

For the reasons discussed above and in OCU's motion to dismiss and supporting brief, Plaintiff's Amended Complaint should be dismissed without leave to amend.

Respectfully submitted,

*/s/ Patrick L. Stein*
John N. Hermes, OBA #4133
Patrick L. Stein, OBA #30737
MCAFEE & TAFT A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
john.hermes@mcafeetaft.com
patrick.stein@mcafeetaft.com
**Attorneys for Defendant**
**Oklahoma City University**

## CERTIFICATE OF SERVICE

This certifies that on June 17, 2016, I electronically transmitted a copy of the foregoing document to the Clerk of Court using the CM/ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Gary W. Wood (gwood@riggsabney.com)
Chad C. Taylor (ctaylor@riggsabney.com)
**Attorneys for Plaintiff**

*/s/ Patrick L. Stein*
Patrick L. Stein